It is Michael V. Horn, number 04-9002. Mr. Travis and Ms. Zapp. And one thing to note, because we're dealing not with a host of issues, but with a discrete issue pertaining to the statute 848Q, we are probably going to confine the State right on time with respect to the typical oral argument that we have. May it please the Court, Ms. Zapp. My name is Ron Travis, and as the panel knows, I've been appointed to represent the interest of And you wish to reserve, what, three minutes for rebuttal? Three minutes of rebuttal. That's fine. Of Mr. Michael. Back on January 12, 2006, a member of this panel during the re-argument on panel reconsideration made a statement, if are wrong on this one, we screwed up forever. And I believe that those words spoken back on January 12, 2006, capture the essence of this case and underscore this. But in this case, as I understand it, what you had was a March 10, 2004 order that dismissed both the habeas unit counsel and Mr. Cosgrove. And the court, or then there was an appeal filed by the habeas unit, even though it wasn't counsel, I think on April 14. And the clerk's office realized that that counsel had been dismissed, and then what we did is we just reappointed Mr. Cosgrove on April 26. In that context, I'm going to work backwards with you. Let's just assume for the moment that shouldn't have been done on March 10. Both sets of counsel should not have been dismissed. What possible harm was there? What possible prejudice was there? Okay. The prejudice is this, Your Honor. The dismissal of the underlying habeas corpus petition did not terminate the entitlement to litigate before the district court. But the problem is the person who did want to terminate it was your client, Mr. Michael, who wrote to the court at the beginning of April. I don't even know what, you know, I don't want an appeal taken. I understand that. But we're talking about two different times when Mr. Michael said that. The record with respect to the March 10, 2004 order, it's very clear that the driving force, at least in my view, the driving force was that Mr. Michael, for whatever reason, wanted to get the habeas unit out of his life. And if that meant getting his petition denied, dismissed, that's what he did. But at this point, they were dismissed on March 10. They appealed, and he's saying, I don't even want, I don't want any appeal taken. So it looks like he's saying whatever it could have, what could have been done in the interim that wasn't done or that's lost as an opportunity, let's assume for just a moment that he did want to appeal at that time. What could have been done before the appeal is that once the court entered the order, and the sequence of the order was dismiss the habeas unit, dismiss Mr. Mike, excuse me, dismiss then-attorney Cosgrove, and then after the attorneys were dismissed, dismiss the underlying petition so that at the time the petition was dismissed, he was without counsel. Well, that was like all at once, wasn't it? Well, it was in one order, but I'm talking about the sequence of how things were done. How is that significant if it's all in one order? It's, all I'm pointing out to you is that the, what he wanted done was one and three, excuse me, yeah, one and three. What Mr. Michael wanted done was one, the habeas attorneys dismissed, and three, the petition dismissed because they went hand in hand in his brain-damaged mind. Well, exactly one year before that, and I can find nothing on the record that indicates a change, he not only asked for the CHCU to be dismissed, but he says, or any other attorneys, and at that time, Attorney Cosgrove was on the case. So the last thing the court heard on that matter before the March 10, 2004 order was that, or any other attorneys to be dismissed. So he got what he asked for. Yeah, he got what he asked for, didn't he? He got more than what he asked for. My understanding is that Mr. Michael never asked for Mr. Cosgrove, Attorney Cosgrove, to be dismissed. He, Attorney Cosgrove is the first attorney that actually was able to bond, for lack of a better term, with Mr. Michael. But when he was dismissed, and let's just agree that it was done erroneously, was there any statement by Mr. Michael that, hey, you made a mistake, I only want the habeas unit attorneys dismissed? As far as the record, there is nothing there. But the point is that when there was the dismissal. In fact, the only thing that is on the record is he didn't even want the appeal taken.  Before he has to go to appeal from the March 10, 2004 order, he's got three options at the district court level. Option one is to file a motion for reconsideration. Option two is to seek relief under Rule 59E. And option three is to seek relief under Rule 60. He's still not precluded, by the way, from seeking relief under Rule 60, is he? Well, it says a reasonable period of time. I don't know if seven years later is reasonable. If that's the only thing left to try to get back to merits review, certainly it's going to be tried and it will be argued that it's a reasonable period, even though it's over seven years after the fact. If he made a Rule 59E motion, what would it have said for him? If his counsel made it for him, what would they have said? I think the approach would have been, and I wasn't counsel then. I understand. I think the approach would have been, Judge, what I wanted is I wanted the habeas unit over and done with. I wanted them out of my life. I was under the understanding that since they had drawn up and filed the 126-page petition, that they had to go along. That had to go along with the petition. I now understand after talking to my friend and lawyer, Mr. Cosgrove, that I can litigate that petition with Mr. Cosgrove and I don't have to deal with the attorneys that I don't like, I don't get along with, whatever the underlying animosity was. And therefore, please reconsider your decision. Please grant me relief. But the interesting thing is, after he initially moved to withdraw his habeas petition in what, 2001? Did he ever vacillate at any time before the district court dismissed the petition in March of 2004? I don't think so. I am unaware as I stand in front of you of any indication on the record that he did vacillate from that petition. But at the point in time when he moved to dismiss, I don't believe that Mr. Cosgrove was anywhere on the radar. I believe Mr. Cosgrove got appointed into the case in 2002, if my recollection is accurate. That it was 2002, a question was raised, as I understand it, by the Commonwealth. The Commonwealth filed a motion to dismiss on the basis that there was a conflict with respect to the habeas attorneys. And again, as I understand it from reading the Commonwealth's brief, made the suggestion to the court that another attorney be appointed under 848. And so we don't know, as we're seated here, what would have happened in this two-month period when he was without counsel as far as filing a motion for reconsideration, filing under 59E or filing under 60, I think it's B. But if he had taken any of those actions, and one of two things would happen. Either the judge would have granted him relief, in which case there would be no appeal, or the judge would have denied relief, in which case the appeal would have been from the denial of the relief, not from the denial of the petition. Well, look, when the court, the district court dismissed his petition on March 10, 2004, it was on April 14th that he wrote Judge Sareka, so it's a month and a few days later, saying he wanted this appeal dismissed. The capital habeas unit didn't have any power to do this authority. And then he said, these attorneys are not authorized by me or the courts to file any petition on my behalf, okay? I ask this court not to recognize any petitions filed by these attorneys or any other individual. So he didn't make any suggestion that he would, to Judge Sareka, that, well, if Cosgrove files something, that's a horse of a different color. He didn't want anybody. He wanted his whole appeal dismissed. It didn't matter who he had. And I understand, and that was roughly a month. That was what was in his mind. That was after the 10-day period to file the motion for reconsideration was long since expired. And during a time period when Mr. Cosgrove no longer had this attorney-client relationship with Mr. Michael because he had been discharged, which in our view clearly is in violation of then Section 848, because he was, Attorney Cosgrove was appointed into the case under 848. Suppose Cosgrove was still there and the judge didn't dismiss him on March 10th, I guess it was. Okay, but he dismissed the petition. So what indication is that Michael would have given Cosgrove permission or authority to do anything? Well, the only indication is that in the record there seems to have been a bonding, a friendship relationship. Yes, I understand that. And that as opposed to saying, get them out of my case, I don't want them, fire them. He embraced Judge, excuse me, now Judge Cosgrove, and I think that he would have listened to Judge Cosgrove and followed Judge Cosgrove's advice. It is clear now, it is clear now, it's beyond clear that he wants to litigate, he wants to have merits review of his underlying habeas corpus petition. He's shown that in four different ways. He's shown that by writings that he submitted on the remand. He's shown that when he testified as part of that remand. He's shown that by the fact, all this happened December 10, 2007, and as the panel knows, Mr. Michael is well familiar with the address of this court and has never been hesitant about writing letters. And in the three and a half years since, he made the commitment to go forward and have merits review. He has not indicated anything. But the problem that you have is that, I mean, the delay in this case has been caused by a person saying he wants to dismiss all proceedings relating to his capital case. He wants counsel dismissed. And later on, he doesn't want Mr. Cosgrove dismissed. And obviously the first question that jumps to anyone's mind is, is the person competent to make that call, which he can make. And he has been found competent three times, once on a state level and twice on the federal level. And so at this point, you know, a lot of the box he's in is of his own making. The question is, if he was denied counsel for a short period of time, was that something so critical that we should presume prejudice under the chronic case? And I can't see anything that happened during that period of time that was negative to him. In fact, there was a positive, an appeal was taken, that he didn't even want to have taken. But the appeal that was taken doesn't answer the question of, could he have moved forward to attempt to get Judge Van Aske to change his mind? None of us can go back. Well, he never indicated that he wanted Judge Van Aske to change his mind. In fact, it seems like he got what he asked for. Following a very thorough call. I mean, Judge Van Aske went through, I mean, went through every hoop known that I can think of to try to make sure this is what he really wanted to do. I mean, there's been such delay here, without being funny, the judges change courts, attorneys become judges. I mean, it was all made possible by your client. If he had taken this case to start with, on the merits of the district court, and fought it out, this would have been history years ago. I understand that, Your Honor. And the only thing I can come down to is what happened in United States v. David Paul Hammer II. I know what happened in United States v. David Paul Hammer I. You know, I happened to... But Hammer was a case where there was a lot more of back and forth. It's also, you have to take each case on its own facts. I understand that. But in Hammer, he appeared in this courtroom, and I believe Judge Greenberg... He did. I remember watching the tape. He appeared by television. Video conferencing. And he said, and I believe it was Judge Greenberg said, well, if I dismiss this case, will we ever hear from you again? He said, nope. Let me die. So we accommodated him. And you accommodated him. And then he went through the same flip-flopping and changing, I want to live, I want to die, I want to fight, on his 2255. And four days before his scheduled execution, again, I was in this courtroom, and a panel of this court said, now that he is steadfast in wanting to go ahead with his 2255, we're entering a stay. We're remanding for merits review. Merits review took place. The death verdict was set aside. Well, the question here is, the only way that I can think of to get to the merits would be to try to proceed under Rule 60B and see what happens there. But at this point, while we hear from Ms. Zapp, we'll get you back on rebuttal. Thank you, Your Honor. Good morning, Your Honors. I'm Amy Zapp, and I represent the custodial officials who are the respondents in the district court who are in the posture of appellees here. I mean, looking at life from 10,000 feet, you've got a person here who's changed his mind repeatedly. And the concern that anyone has in a capital case is that you want, and it always goes through the habeas procedure in federal court, no federal court has heard the merits of the habeas petition. And there are possibilities here that could exist, or facts that possibly could be developed. For example, what counsel possibly would allow an individual at sentencing to plead or to stipulate to two aggravating factors and no mitigating factors? So what do you do in this context? Well, Your Honor, from my view at 10,000 feet, I have to start by saying there is no long history of escalation here. What we're talking about are relatively recent events. No, you're right. There was a long history of saying that. I want nothing. I want my sentence to be carried out. Certainly at least three years straight. And let me point out, too, that there was an episode in state court where he informed the state court he wanted to go ahead with the appeal. But later the testimony would explain that he gave that direction because he thought it would expedite the process. If things were pending for so long, he thought, well, just decide the appeal and I'll get to the result. I want faster going that route as opposed to saying drop the appeal because that was going nowhere for him. To go back to what you were saying, though, about what kind of lawyer would say don't put on any evidence at a trial level. Well, of course, we're not here on the merits. And there are many lawyers. There's a case called Shriver v. Landrigan out of the U.S. Supreme Court where the client had told his lawyer he didn't want any evidence, and they made an informed decision not to do it. The lawyer did that and was not found to be ineffective, that he had to honor his client's wishes. And that's key here because all along the attorneys who represented Michaels were honoring his direction as they're ethically obligated to do. So let's say we rule in your favor. And so there's no 59E motion available to Mr. Michael, but there is one under 60B if it's deemed reasonable with time to do so. Is that the only thing you see as a possibility that could be raised on his behalf? And I'm not even sure there's good grounds for that, Your Honor, at this point in time, because as we all know, we are here seven years in this court. These proceedings are here for seven years. And I think at this point we are well beyond the reasonable stage for a request. This wasn't my case at the beginning. This was Judge Chertoff's case, but he went on to other things. Exactly. I remember because I was in the back row when both times it was argued previously. And, Your Honor, as we pointed out in the record and in our papers too, that this is a situation where the Commonwealth was not unmindful of Mr. Michael's right to counsel. I mean, we were the ones who suggested that Judge Vineski appoint someone else because to us, we didn't know. I mean, it sounded to us as though his lawyers weren't doing what they were being directed to do. And if he was competent in giving them directions they weren't honoring, there was a problem there. He's not being represented by counsel ethically, and as we all know, that's a requirement. And on the other hand, if he wasn't competent, that needed to be litigated. Judge Vineski, I mean, really delved into this. He conducted a proceeding over a good period of time. Nobody's questioning. At this point, there has been three determinations. But all along during there, you know, Mr. Coggrove's password was with him all along there. There was no suggestion in any of those proceedings. And believe me, Judge Vineski gave him all the time in the world to say, I don't like this or I just want these guys out. I'll stick with Mr. Coggrove, that kind of thing. No communication on this point. Rather, as you have all pointed out, that all his communication is, I want this over with. I want these appeals gone. I think we have a right, and under the traditional principles of waiver, to rely on that at this point and to now to try to upset all that, turns the whole doctrine of waiver on its head. There was a competent waiver given here, and now that someone has changed their mind, that doesn't make it any less competent or any less valid. And, you know, his expression now that he wants to live, I mean, he has other avenues to pursue this if he wants to try to obtain that kind of relief. And the other avenues that you perceive are what? Well, he's got the avenue of applying for commutation in Pennsylvania. This court just recently decided the Pennsylvania Prison Society case, which, of course, dealt with the constitutional amendments and whether there's a Pennsylvania constitution changing certain rules. But in the course of that, the court looked at the nature of the process in Pennsylvania and agreed that, like Herrera talks about, it's a sort of a last stop or another alternative for someone who's done with the judicial system. So there is that avenue he might pursue. But he doesn't have a legal right to pursue this. When was the last time that you saw a commutation granted? There was one, I believe, not in a capital case, but in life sentence cases. I think Mickens-Thomas was one not too long ago. And there was a recent one, I think, and I don't remember the name of the— But in a capital case, I— I don't recall that there was ever one in a capital off the top of my head. I'd have to go and take a look at that. When did Pennsylvania last execute anyone? 1996. It was Gary Heidnick, Your Honor. Who? Gary Heidnick. He was out of Philadelphia. 1990. It's 1996, I believe. I wrote an opinion that was executed. Zettelmeyer. He was the first after the new law was adopted. And the second was Leon Moser. But I think—I believe Zettelmeyer was executed in 1993. And I believe Heidnick was—he was the last, I know for sure. And he was 96, I think, July of 96. But— If you wanted to do 60B, is there anything we can do with respect to that process? Would we need to expand the Certificate of Appealability, or would we just— let's say we rule your way in connection with the 848Q issue, which is what is before us now on the current Certificate of Appealability. So the next thing that happens is you go back to district court, and he would make the 60B motion. And is there anything—but the court doesn't have to hear it, isn't that correct? I think that's correct, Your Honor. In fact, I think the proceedings are terminated in the district court and have been for a long time. I mean, there's nothing to stop him from filing it. I'm not saying that it's legitimately before the court. I believe, given all of the process to date, everything has been—it's now terminated. It's over for him. The other thing— None of that would have anything to do with what we're doing today, though, would it? No, I think— We're only reviewing whether or not the court erred in discharging counsel and whether or not, if it did, that was harmless. That's the only thing before us. That's it. I understand it, Your Honor. And I wanted to add something, too, because I don't want to lose the opportunity to point this out. In other words, I don't think it would be appropriate for us to say, but we're doing this without prejudice to apply under 60B and, like, imply that we thought the district court should hear it or not. That's strictly up to the district court. I agree, Your Honor. In the first instance. I agree. And I'm not going to concede that that would be an appropriate move at this point. But, of course, that's something for another day and another time. It's not before the court at this moment. If we affirm, that time will be reached. I'm sorry, Your Honor? If we affirm, that time will be reached. I wanted to mention something. In the harm argument that Mr. Michael makes in his papers, they talk about the harm he experienced was that they couldn't file a 59E motion. Because his counsel may have been able to persuade him to do that. I'm in trouble, and I find it astonishing to argue that counsel somehow has an obligation to persuade his client to do something other than what the client, a competent client by all determinations so far, has directed him to do. I mean, that is turning the whole notion of representation on its head. And how can that be harm? There is no constitutional right to have your lawyer persuade you to do something other than what you want to do. And that is very troubling. But what you saw happen in this case, and it happened with Mr. Cosgrove, out of great empathy he was trying to be as good an advocate as he could for his client. And in order to do so, he had to have his client be willing to agree with him. Ultimately, Cosgrove seemed to have more sway with Mr. Michael than anyone in the habeas unit did. So, I mean, they're just trying to do their job. Yeah, well, I understand, but is it a lawyer's job to sway the client? Or is it his job to carry out the client's motions? No, but I think for Mr. Cosgrove, and I think what he said here, is that most humans would not want to just give up the ghost. I think Mr. Cosgrove's view was that part of the reasoning was because of depression, despair, whatever, and he thought that perhaps he could get his client to go along with the appeal. And it turns out, before he was appointed to the bench, he was successful in that. Well, Your Honor, he also sat side by side with Mr. Michael during the proceedings that spanned two years in the district court. And the district court had a right to rely on what was happening in front of it. And also, it had the knowledge that, as Mr. Travis pointed out, that Mr. Michael was not somebody who was afraid to write to the court. He wrote to everybody. He wrote to us. In fact, that's how we became aware of the issue involving the Capital Habeas Unit, when he wrote to us asking us if we can do something about it. And we automatically relayed that communication to the district court and pointed this out. And that's to say he's not a man who sat by silently here. And the district court, as you all know, gave him plenty of opportunity to change his mind. In fact, went through how important it was that he make a decision and take time to think about what he really wanted. There's no quarrel with the colleague that was here. Oh, absolutely not. I mean, it's very detailed. And so, Your Honors, as we have said in our briefs, we believe that, first of all, there is a jurisdictional issue here. And we're not abandoning that by any stretch of the imagination. He's not an aggrieved party. He got everything he wanted. And that traditionally means that he doesn't have standing and there's no Article III jurisdiction. And, I mean, it seems very plain to me. This is not a case like Sen. I know Mr. Travis thinks that. Well, I mean, at this point, the way we left it in 2006 is you went back for a competency hearing and then to be asked one final time, do you wish to go forward? And my understanding is he said he wished to go forward. So I don't know. Well, he indicated that. But there is a difference between wishing and having a cognizable legal right to do so. I mean, there are many people executed in this country who want to live, but they don't have any legal right to pursue their appeals anymore. And he is exactly in that situation. Well, at this point, it seems like we're four-plus years beyond that. Well, it seems, you know, and again, you know, I hate to keep coming back to the point that this has been pending for seven years, but, you know, our interest, too, as the Commonwealth, we have a right to carry out and enforce our laws. And this thing has been on hold for seven years in the face of a valid waiver. But at this point, you've said something earlier, which is you have just one certificate of appealability with one issue dealing with 848Q. Right. And was there a violation of 848Q? And if there was, was it in any way prejudicial? And is there anything else you want to add to that? Well, Your Honor, as I said, we actually questioned the jurisdiction of the court to take up that issue because if he doesn't have any standing, there is no appeal, and this is not a matter that can be addressed by the court. There's nothing if he is not an aggrieved party. And the court has to dismiss the appeal. And that's it, Your Honor, for my position and, of course, what we have said in our filings. Okay, thank you very much. Thank you, Your Honor. Mr. Travis, we'll get you back on rebuttal. Thank you, Your Honor. With respect to the question you asked the Commonwealth attorney about the stipulation, when the stipulation was made at trial that there's aggravating factors and no mitigating, that's automatic death under Pennsylvania law, the way that the death statute is written. If you find an aggravator and there's no mitigator, it's got to be death. But at this point, I mean, the only issue we've got, and that's the reason we're not having the typical capital case oral argument, is we have one issue dealing with 848 as to whether there was a violation of that. If there was, was it during such a critical period that prejudice under chronic should be presumed? And it doesn't, as we said to you before, even if there were a violation, it doesn't seem as if there was any detriment that occurred to Mr. Michael. In fact, he is the beneficiary of an appeal that was taken that he initially did not want to have happen. And I'll just repeat myself that I think that the crucial period of time after the dismissal, when he could have filed a motion for reconsideration and could have filed the 59E, which as the court has indicated is no longer available to him, that was a crucial period of time where he was totally without counsel because Mr. Cosgrove was dismissed, clearly in violation of the language of 848. Once appointed into the case, he was there for the duration, unless... But even if we agree with you, what was the prejudice? Well, the prejudice is that now we may or may not have one limited area that we can try to litigate, and that's a Rule 60B, which as I heard the Commonwealth, they're not conceding that that's even timely. So they lost the opportunity to ask for a rehearing, which could have been done within 14 days under the local rules, lost the opportunity to ask for 59E relief. But at some point, an individual controls his own case. The attorneys are that person's agent, and he was saying at that point in time, I don't want to go any further. And he had been saying it for three years. He was saying that with respect to the action that the Federal Habeas Unit wanted to take. He wasn't saying that with respect to what Attorney Cosgrove could have been able to explain to him his options were with Attorney Cosgrove being the Chief Attorney. Thank you. Thank you. And thank you, both counsel, for undertaking this difficult case. We'll take the matter under advisement and recess.